UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

STERLING R. LANIER, JR.,

　　　　　Plaintiff,

v.　　　　　　　　　　　　　　　Case No. 3:08-cv-833-J-12JRK

CAPTAIN R. SMITH, et al.,

　　　　　Defendants.
_____

## ORDER

### I. Status

Plaintiff, an inmate of the Florida penal system who is proceeding pro se, initiated this case by filing a Civil Rights Complaint (Doc. #1) (hereinafter Complaint) pursuant to 42 U.S.C. § 1983 on August 28, 2008. He names Captain R. Smith, an employee of the Florida Department of Corrections (hereinafter FDOC) and Sergeant E. L. Allen, a former employee of the FDOC, as the Defendants. Plaintiff contends that his rights under the Eighth Amendment were violated when these officers used excessive force against him on January 1, 2007.

This cause is before the Court on Defendants' Motion for Summary Judgment (Doc. #28), filed September 1, 2009.[1] On September 8, 2009, Plaintiff filed his Motion of Response (Doc. #29) (hereinafter Response), construed to be Plaintiff's response.

## II.  Summary Judgment Standard

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Crawford v. Carroll, 529 F.3d 961, 964 (11th. Cir. 2008) (citing Fed. R. Civ. P. 56(c) and Wilson v. B/E/Aerospace, Inc., 376 F.3d 1079, 1085 (11th Cir. 2004)).

"The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Allen v. Bd. of Pub. Educ. for Bibb County, 495 F.3d 1306, 1313 (11th Cir. 2007) (citations omitted).

> "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,'

---

[1] The Court advised Plaintiff of the provisions of Fed. R. Civ. P. 56, notified him that the granting of a motion to dismiss or a motion for summary judgment would represent a final adjudication of this case which may foreclose subsequent litigation on the matter, and gave him an opportunity to respond. See Order (Doc. #7).

designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324, 106 S.Ct. 2548).[2]

Id. at 1314. See also Celotex, 477 U.S. at 324 ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves").

### III. Plaintiff's Allegations

Plaintiff alleges the following facts in his Complaint. On January 1, 2007, while located at Columbia Correctional Institution (hereinafter CCI), he heard someone yell for help. Plaintiff looked through the laundry room door and saw Sgt. Allen and another officer with a naked inmate. Sgt. Allen noticed Plaintiff watching him, and Sgt. Allen came to the laundry room door and punched a piece of plexiglass in the door, which hit Plaintiff in the face. Plaintiff picked up a broom and told Sgt. Allen to stay back. Plaintiff put the broom down and started to return to his bunk. Sgt. Allen and eight or nine other guards ran into the dormitory and attacked Plaintiff from behind, punching and kicking him in the back of the head, legs and body. Plaintiff was handcuffed and taken to medical. Plaintiff was checked by medical staff, and they

---

[2] Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

3

noted in his medical records that his right arm and middle left finger were swollen and possibly broken or fractured.

Captain Smith and a few guards took Plaintiff to Y-dorm confinement. Captain Smith caused Plaintiff's handcuffs to irritate Plaintiff's swollen arm. Plaintiff pulled away from Captain Smith. Plaintiff was pepper sprayed for refusing to give back the handcuffs. Plaintiff was recuffed and taken to the showers. He was sprayed again. Captain Smith told Plaintiff he was being taken to medical for another check, and Plaintiff was pulled out to the officer's station. Plaintiff was sprayed again and returned to his room. He was sprayed a final time after the handcuffs were removed.

Plaintiff force-vomited in order to be able to breathe. He stayed in pepper spray covered boxers for two days and was not fed. After two days, he heard another captain say: "make sure he's dead before you go in there." Complaint at 9. Plaintiff has been attacked four more times since this incident. He feels his life is in danger. As relief, he seeks a declaratory judgment and punitive damages.

Reports of Force Used were completed by Sergeant Allen and Captain Smith. Exhibit E (subduing Plaintiff) & Exhibit F (gassing Plaintiff), attached to the Response. Warden Singer found the following:

4

> After further review of this Use of Force
> Packet, I found that all appropriate
> documentation as prescribed in Procedure
> 602.002, has been collected with no
> inappropriate actions noted. Officer
> Lamoreaux sustained some small abrasions to
> the facial and upper torso area. Inmate's
> allegations of excessive force have been
> MINS'd (*189355). The inmate sustained some
> small abrasions to the upper torso area and to
> his knuckles.

Exhibit E, attached to the Response.

Warden Singer also found:

> After further review of this Use of Force
> Packet, I found that all appropriate
> documentation as prescribed in Procedure
> 602.002, has been collected with
> no inappropriate actions noted. **The hand held
> and fixed wing videos were reviewed with no
> discrepancies noted.** Inmate's allegation of
> excessive force was MINS'd (#189355).

Exhibit F, attached to the Response (emphasis added).

On January 10, 2007, Plaintiff was referred to assignment on

Close Management confinement for the following:

> On January 1, 2007, at approximately 1805
> hours, while Sergeant Allen was assigned to C-
> Dorm as housing Sergeant, he observed Inmate
> Lanier, Sterling #P10928, C2-118U, with a
> broom stick in his hand threatening to do
> bodily harm to any staff member. While in
> possession of the weapon, he began to beat on
> the 2 wing laundry room door while stating, "I
> am the f__ing F.B.I. come and get it!"

Report of Close Management, attached to the Complaint. Plaintiff

was recommended for placement on Close Management I status for

wielding a weapon which could have resulted in staff injury. Id.

5

Plaintiff filed a grievance to the warden on January 18, 2007.

It states:

> On Jan. 1, 2007 I was in C2-118 upper.
> The laundry man an older black gentelman [sic]
> with glasses that sleeps in C2-101 lower and I
> were having a conversation about the laundry
> cart standing next to the laundry door and
> laundry cart. I heard some one yell and
> looked through the plexy-glass in the laundry
> door. A white officer and officer E. L. Allen
> – AEL02 had a black inmate nacked [sic] with
> his legs spred [sic] and his hands on his
> anckels [sic]. My face was close to the
> plexy-glass and officer Allen looked over and
> seen me watching. Officer Allen, EL punched
> the plexy glass and hit me in the face. He
> grabed [sic] his keys and started coming at
> me. I picked up a brcom then he called for
> back up. I put down the broom a[nd] headed
> back to my bunk. Half way to my bunk 8 or 9
> officers came from behind and started punching
> and kicking me to the ground. After they took
> me to medical, w[h]ere I told the nurse I
> thought my right arm and left middle finger
> were broke [sic]. Captain R. Smith, Officer
> J. Gonzalez, Officer N. Sharp, and Officer J.
> W. Johnson – JJW05 took me to Y/dorm
> management cell [the] one closest to the
> showers. Captain Smith told me to put my arms
> out the flap, he uncuffed the left cuff, then
> the right cuff on the arm I thought might be
> broke [sic] he started twisting or rotating
> the cuff around the part I thought was broke
> [sic], so I pulled my hand back in and told
> him that hurt. He told me to stick them out
> again and he did the same thing twisted the
> cuffs on my hurt arm. So I pulled it back in
> again, and refused to stick them back out then
> got sp[r]ayed with gas. I put the hand cuffs
> out the flap he took them off then sprayed me
> again. Then they told me cuff up again we're
> going to take you to medical. They took me
> out beside the officer's station and the
> skinny nurse with shoulder length hair asked

me to open my eyes and asked if I could see.
I opened my eyes and saw her with a young
black girl in a dress maybe 4 or 5 yrs old
holding a can of mase [sic] and the little
girl pep[p]er sp[r]ayed me. They took [me]
back into the management cell took the cuffs
off and pep[p]er sprayed me again. I had to
stick my finger down my throat and try to
throw up to get some air because I was
sufficating [sic] and thought I was about to
die.    I don't feel that I'm guilty of
disobeying a verbal order.  Sorry about all
the trouble.  I just thought I'd let you know
what's going on.

Request for Administrative Remedy or Appeal, Dated January 18,

2007, attached to the Complaint. The response, dated February 13,

2007, states:

Your request for administrative remedy has
been received, reviewed and evaluated.  You
received a disciplinary report on 01-1-07 for
6-1, Disobeying a Verbal Order, Log 201-
070007.    Section one supports a clear
understanding of the charge. The disciplinary
team found you guilty based on the statement
of facts and the investigation.  You[r]
allegations were referred to the Office of the
Inspector General.  Your complaint has been
referred to Office of the Inspector General
for appropriate action.  Upon completion of
necessary action, information will be provided
to appropriate administrators for final
determination and handling.

Based on the foregoing, your request for
administrative remedy is denied.  You may
obtain further administrative review of your
complaint by obtaining form DC 1-303 Request
for Administrative Remedy or Appeal,
completing the form, providing attachments as
required, and forwarding your complaint to the
Bureau of Inmate Grievance Appeals.

Response, Dated February 13, 2007, attached to the Complaint.

Plaintiff filed a grievance to the warden on January 18, 2007, complaining that he was gassed three times and banged on the sink yelling for help. Request for Administrative Remedy or Appeal, Dated January 18, 2007, attached to the Complaint. In response, he was told the matter had been referred to the Inspector General. Response, Dated January 31, 2007, attached to the Complaint.

Plaintiff appealed to the Secretary about being gassed. Request for Administrative Remedy or Appeal, Dated March 12, 2007, attached to the Complaint. His appeal was returned without action as the matter was previously referred to the Inspector General. Id.

Disciplinary hearings were conducted on January 18, 2007, for the charge of disobeying a verbal order for failure to submit to removal of the handcuffs, and for causing a disturbance, when Plaintiff began banging the handcuffs on the sink and yelling profanities. Disciplinary Report Hearing Information, Log # 201-070007 and # 201-070008, attached to the Complaint.

### IV. Defendants' Motion for Summary Judgement

In their Motion for Summary Judgment, Defendants contend that Plaintiff has failed to establish a violation of his constitutional

rights.   Defendants have submitted the following evidence in support of this contention.[3]

On January 1, 2007, Defendant Allen was assigned to C-dormitory of CCI.   Ex. C1 at 1.   Officer T. Lamoreaux and Defendant Allen were conducting a routine security check on the (2) wing of the dormitory.   Id.   As they entered the wing, Plaintiff was at the laundry room door with a broom handle in his hand.   Id.   Plaintiff was hitting the laundry room door with the broom and stating:   "I am the f—ing F.B.I. come and get it."   Id.   Several times, Defendant Allen ordered Plaintiff to put the broom handle down. Id.   Defendant Allen used his radio to call for assistance.   Id.

Sergeant J. Johnson arrived, and they entered the wing.   Id. at 1-2.   Plaintiff ran towards the bay area of the dormitory.   Id. at 2.   Defendant Allen ordered Plaintiff to stop his actions, but he continued to run into the bay area.   Id.   Defendant Allen grasped Plaintiff by his right arm and right wrist with both hands and ordered Plaintiff to place his arm behind his back.   Id. Plaintiff resisted.   Id.   Defendant Allen maintained his grasp of Plaintiff's right arm and wrist and placed Plaintiff on the floor. Id.   Restraints were applied.   Id.   Plaintiff was escorted to medical for a post use of force physical examination by the medical

---

[3] The Court will refer to Respondents' Exhibits as "Ex."

9

staff.  Id.  The force used was for the protection of staff members and the inmate.  Id.

Defendant Allen was not in the laundry room with a naked inmate.  Id.  Defendant Allen did not punch a plexiglass window striking Plaintiff in the face.  Id.  Defendant Allen did not observe anyone else punch or kick Plaintiff.  Id.

Correctional Officer Terry Lamoreaux confirms that Sergeant Allen gave Plaintiff several orders to put the weapon down and called for assistance.  Ex. C2 at 1.  Officer Lamoreaux states it became necessary to subdue Plaintiff when he continued to run into the bay area.  Id. at 2.  Officer Lamoreaux assisted Sergeant Allen in attempting to restrain Plaintiff.  Id.  Plaintiff attempted to break free from their hold, and it became necessary to place Plaintiff onto the floor.  Id.  Sergeant Johnson applied restraints, and the use of force ended.  Id.  Plaintiff was escorted to medical.  Id.  Officer Lamoreaux did not witness Sergeant Allen punch a plexiglass window, and he did not witness any officer punch or kick Plaintiff.  Id.

The Emergency Room Record describes Plaintiff's injury as scattered areas of erythema [redness] mid chest.  Ex. E.  Scattered abrasions were noted on Plaintiff's knuckles.  Id.  Although Plaintiff complained of pain in his left hand middle digit, no injury was found to that digit.  Id.

Defendant Smith attests that on January 1, 2007, after the use of force, Plaintiff was being placed back in his cell. Ex. G at 1. When Sgt. Johnson unlocked Plaintiff's handcuffs and released the left handcuff bracelet, Plaintiff snatched the handcuffs away and pulled them through the food flap into his cell. Id. Defendant Smith ordered Plaintiff to place his hands back into the food flap in order to allow for the retrieval of the handcuffs. Id. at 1-2. Plaintiff refused Defendant Smith's order. Id. at 2. Defendant Smith repeated the order, and Plaintiff refused to comply. Id.

Plaintiff began to beat the handcuffs on the sink of the cell. Id. Defendant Smith ordered Plaintiff to stop, and Plaintiff did not comply. Id. Defendant Smith reviewed Plaintiff's risk assessment for the use of chemical agents, which showed that Plaintiff had no known medical conditions that would be exacerbated by the use of chemical agents. Id. Defendant Smith acquired medical clearance from Nurse S. Rivera to use chemical agents on Plaintiff. Id. Defendant Smith contacted the duty warden, Assistant Warden Mike Willis, who approved the use of chemical agents on Plaintiff, if necessary. Id. Defendant Smith tried to counsel with Plaintiff again and ordered him to stop the disruptive behavior. Id. Plaintiff refused and continued to beat the handcuffs on the sink. Id. A final order to cease his behavior was given to Plaintiff by Defendant Smith. Id. Plaintiff was

11

warned that if he did not stop, chemical agents would be administered. Id. Plaintiff refused to stop his disruptive behavior. Id.

At that point, Defendant Smith dispensed three - half second bursts of chemical agent OC into Plaintiff's cell. Id. Thereafter, Plaintiff ceased his disruptive behavior. Id. A video was taken. Id. at 2-3. Plaintiff was taken from his cell and given a cool shower. Id. at 3. After his shower, Plaintiff was taken to medical for a post use of force physical by Nurse Rivera. Id. After Plaintiff's medical examination, he was secured in a decontaminated cell. Id. He received a change of linens. Id. Plaintiff was observed for approximately sixty minutes for any signs of distress from the use of the agents. Id. None were indicated. Id.

Defendant Smith is certified in the use of chemical agents. Id. Th agent, MK-9, weighed out at (620) grams and weighed in at (560) grams. Id. Defendant Smith also received a post use of force physical. Id.

The Emergency Room Record, post use of chemical agents, shows that Plaintiff complained that it was burning all over. Ex. H at 1. The assessment was erythema (redness) noted on Plaintiff's face, arms, neck and back. Id. The sceleras (whites) of Plaintiff's eyes were also noted as having erythema (redness). Id.

12

Plaintiff was discharged and advised not to use lotion, soap or hot water.  Id.  He was also told not to rub his eyes.  Id.

Tony Nolan, the Institutional Inspector, attests that he opened two investigations concerning Plaintiff's allegations.  Ex. J.  The witness statement of Plaintiff, contained within the Use of Force packet, states:

> I'm doing an FBI investigation under cover against Hate crimes against white.  A Black officer punched me in the face threw [sic] the plexy glass at the laundry room when I looked in to see why another inmate was yelling[.]  After I got punched in the face I picked up a stick and told him I'm FBI Chapter 776 I can defend myself in any situation.  Then 8 officer[s] came in and broke my body up pretty bad.

Ex. K.

Investigator Nolan reviewed the Incident Reports and the Diagram of Injury and the Emergency Room records.  Ex. J at 2.  He found that Plaintiff had no injuries consistent with his allegations.  Id.  Plaintiff, on January 4, 2007, signed a sworn Affidavit, which states: "Everything was done right[.]  I was not abused[.]  I['']m not FBI[.]  I need some mental help[.]  I['']m sorry for the trouble[.]  This is true."  Ex. L.

Investigator Nolan, based on his investigation and Plaintiff's admission that his allegations were not true, found that Sergeant Allen, Sergeant Johnson and Officer Lamoreaux did not use excessive force.  Ex. J at 2.

13

While investigating the gassing allegations (Plaintiff claimed he was gassed in his cell twice and once outside of his cell), Investigator Nolan conducted a recorded interview of Plaintiff. Id. Plaintiff said that Captain Smith gassed him both times in his cell and a little black girl, wearing a blue dress, gassed him outside of his cell. Id. Plaintiff also claimed, that for the past eleven years, he has been a special agent for the FBI. Id. at 3. He explained that he has a camera behind his right eye, a chip in his head that records his thoughts and a post in his tooth that records sound. Id.

Investigator Nolan concluded:

> I reviewed of [sic] all documentation in the use of force packet which indicated that only one application of chemical agents was used. The chemical agents were applied in an effort to quell a disturbance after inmate Lanier refused to allow his handcuffs to be removed and began to bang the cuff bracelets on the sink located in his cell. Due to first use of force incident, a video tape recorder was activated. A review of the videotape indicated that Inmate Lanier was not subjected to chemical agents after being removed from the cell. He received a shower and was placed back into a cell without incident. He was never taken to the area of the officer's station and no little girl was ever observed. The video tape was stopped after he was placed back into the cell. A review of the fixed wing video did not reveal an application of chemical agents after the hand held video ceased.

Ex. J at 3.

14

## V. Law and Conclusions

The Eleventh Circuit has set forth the standard for an excessive use of force claim for an inmate:

> In both Fourteenth and Eighth Amendment excessive force claims, whether the use of force violates an inmate's constitutional rights "ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Whitley v. Albers, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) (establishing the standard for an Eighth Amendment excessive force claim); see Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005) (applying the Whitley test in a Fourteenth Amendment excessive force case). If force is used "maliciously and sadistically for the very purpose of causing harm," then it necessarily shocks the conscience. See Brown v. Smith, 813 F.2d 1187, 1188 (11th Cir. 1987) (stating that the Eighth and Fourteenth Amendments give equivalent protections against excessive force). If not, then it does not.

Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (per curiam).

This Court must consider the following factors in determining whether the force was applied maliciously and sadistically to cause harm:

> a) the need for the application of force; b) the relationship between the need and the amount of force that was used; c) the extent of the injury inflicted upon the prisoner; d) the extent of the threat to the safety of staff and inmates; and e) any efforts made to

> temper the severity of a forceful response.
> <u>Cockrell v. Sparks</u>, 510 F.3d 1307, 1311 (11th
> Cir. 2007) (citations omitted). When
> considering these factors, we "give a wide
> range of deference to prison officials acting
> to preserve discipline and security, including
> when considering decisions made at the scene
> of a disturbance." <u>Id.</u> (internal quotation
> marks, alterations, and citation omitted).

<u>Fennell v. Gilstrap</u>, 559 F.3d 1212, 1217 (11th Cir. 2009) (per curiam).

This Court finds the Defendants have met their initial burden of showing this Court, by reference to affidavits and Plaintiff's medical records, that there are no genuine issues of material fact that must be decided at trial. Defendants have presented evidence that Plaintiff had a weapon, a broom handle, refused to put it down and ran into the dormitory. Thus, there was a need for the application of force to restore order and security on the wing and to protect staff members on the wing. Defendants have also shown that they used only the amount of force necessary to restore good order and discipline and to protect themselves and others from an attack by Plaintiff.

The Defendants have also shown that Plaintiff refused to allow the handcuffs to be removed and he caused a disturbance on the wing by banging the handcuffs on the sink. Defendants used the minimal amount of force, the use of a chemical agent, to regain order on the wing.

16

Furthermore, the Defendants have presented evidence that Plaintiff's injuries were minimal[4] and consistent with their lawful use of force to restrain Plaintiff, to gain control of Plaintiff and to restore order to the institution. They have shown that there was a threat to the order and safety of the institution due to Plaintiff's behavior. Finally, the fact that Plaintiff was immediately escorted to the medical department for treatment after each use of force is "strong evidence that there was no malicious and sadistic purpose in the use of force." Id. at 1220 (citing Cockrell, 510 F.3d at 1312).

Because the Defendants have met this initial burden, Plaintiff is required to present his own documentation (affidavits, depositions, answers to interrogatories, admissions on file, etc.) to show that there is a genuine issue for trial. Plaintiff has failed to present this Court with any evidence, other than his own allegations in his verified Complaint.[5]

---

[4] After the use of force, Plaintiff had abrasions on his knuckles and redness mid chest. Ex. E. The nurse found no injury to the left hand middle digit. Id. The medical records do not show that Plaintiff had either a fractured right arm or a fractured middle left finger. After the chemical agent was utilized, Plaintiff had redness on his face, arms, neck and back and the whites of his eyes were red. Ex. H. He was provided with a shower and taken to medical.

[5] Plaintiff's Response (Doc. #29) is not sworn to under penalty of perjury. Furthermore, Plaintiff has not presented any affidavits or other documents in response to the Defendants' Motion for Summary Judgment from witnesses or medical professionals

As noted by the United States Supreme Court:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule Civ. Proc. 56(c). As we have emphasized, "[w]hen the moving party has carried its burden under

supporting the allegations raised in his Complaint. Instead, he has submitted the affidavits and medical records previously submitted by the Defendants. He also submitted the Reports of Force Used; however, these reports support the Defendants' version of the events, not Plaintiff's. The Court recognizes that at the end of Plaintiff's Complaint, Plaintiff signed his name after the following statement on the form, "I declare under penalty of perjury that the foregoing is true and correct." Complaint at 10 (capitalization omitted). There is some authority in this circuit that "[a] verified pleading may be treated as an affidavit on summary judgment if it satisfies the standards of Fed. R. Civ. P. 56(e). See Gordon v. Watson, 622 F.2d 120, 123 (5th Cir. 1980)." United States v. Four Parcels of Real Property, 941 F.2d 1428, 1444 n.35 (11th Cir. 1991). However, in Celotex, the Supreme Court found that "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), **except the mere pleadings themselves**, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred." Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997) (quoting Celotex, 477 U.S. at 324) (emphasis added), cert. denied, 522 U.S. 1126 (1998). In Owen, a pro se prisoner filed a civil rights complaint, and the defendants filed a motion for summary judgment, which was supported by an affidavit. The Eleventh Circuit affirmed the district court's granting of the defendants' motion for summary judgment, finding that there was no issue of material fact because the plaintiff did not address the sworn assertions in the defendants' affidavit and opposed the defendants' affidavit with only unauthenticated copies of grievance responses from prison authorities. It is unclear whether the complaint in the Owen case was verified, but the Eleventh Circuit did not treat the complaint as an affidavit in opposition to the motion for summary judgment. Even if this Court construes the allegations in the Complaint as an affidavit in opposition to the Defendants' Motion for Summary Judgment, such evidence is insufficient to prevent the entry of summary judgment in the Defendants' favor.

Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). **When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.**

<u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007) (emphasis added).

Here, the opposing parties are telling two different stories, "one of which is blatantly contradicted by the record, so that no reasonable jury could believe it." <u>Id</u>. Indeed, some of Plaintiff's allegations verge on the fantastical and delusional (he is an FBI agent and he was pepper sprayed by a little girl). Plaintiff has provided conflicting statements regarding the events. In Plaintiff's first witness statement, he said he was an FBI agent conducting an undercover investigation and he was attacked by eight officers. In the January 4, 2007, sworn affidavit, Plaintiff said

19

everything was done right, he was not an FBI agent, that he needed mental help and he was sorry for his actions.

Furthermore, the medical evidence is consistent with the amount of force Defendants allege they used to restrain Plaintiff and restore order and is inconsistent with Plaintiff's allegations. Plaintiff's medical records also belie Plaintiff's claim in his Complaint that Defendants used excessive force to restrain him or that they repeatedly subjected him to chemical agents.

In sum, there is a wealth of evidence that supports Defendants' version of the events. The only evidence in support of Plaintiff's version are Plaintiff's allegations in his verified Complaint, which is contradicted by Plaintiff's own sworn statement. See Ex. L. This Court concludes that no reasonable jury could believe that the Defendants used excessive force during the incidents in question; Plaintiff's story is "blatantly contradicted by the record." Scott, 550 U.S. at 380.

The Court acknowledges that in many excessive force cases the prisoner's and the correctional officers' competing versions of the event will be enough to defeat summary judgment. However, given the inconsistencies in Plaintiff's own story, the lack of any other evidence to support Plaintiff's claim, the strong and consistent testimony of the correctional officers, the minimal injuries, which are inconsistent with Plaintiff's allegations, and Plaintiff's own

20

sworn statement, Ex. L, this is the type of case as to which summary judgment is appropriate. See <u>Kesinger v. Herrington</u>, 381 F.3d 1243, 1247 (11th Cir. 2004) ("a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment.").

Therefore, it is now

**ORDERED:**

1. Defendants' September 1, 2009, Motion for Summary Judgment (Doc. #28) is **GRANTED.**

2. The Clerk shall enter final judgment in favor of Defendants and against Plaintiff, and close this case.

**DONE AND ORDERED** at Jacksonville, Florida this 18TH day of November, 2009.

_Howell W. Melton_
UNITED STATES DISTRICT JUDGE

sa 11/18
c:
Sterling R. Lanier, Jr.
Ass't A.G. (Marks)

21